WILLIAM WIDENER ET AL., APPELLANTS, V. W. E. SHARP ET AL., APPELLEES.

FILED JULY 20, 1921. No. 21647.

1. **Insurance:** BENEFICIAL ASSOCIATIONS: LEGISLATIVE SESSIONS: DELEGATES. Delegates elected to serve at a regular quadrennial

session of the supreme legislative and governing body of the Royal Highlanders, a fraternal beneficiary association, cannot lawfully serve at a special session two years later, where no provision is made for electing delegates to a special session.

2. ———: ———: INCREASE OF RATES. The record examined, and *held* that the Royal Highlanders, a fraternal beneficiary society, was without power to legislate or to adopt the new table of rates that is complained of by plaintiffs.

2. ———: ———: ———: INJUNCTION. Where the executive officers of a fraternal beneficiary society are about to enforce certain rates that have been adopted at a special session of the supreme governing body of the society, and it appears that no provision has been made by the society for electing the delegates who adopted the rates, such executive officers will be enjoined from enforcing such rates on application by a member of the society who is aggrieved.

APPEAL from the district court for Lancaster county: ELLIOTT J. CLEMENTS, JUDGE. *Reversed, with directions.*

*J. C. McReynolds,* for appellants.

*Hainer, Craft & Lane, contra.*

*O. B. Clark, amicus curiae.*

Heard before MORRISSEY, C.J., ALDRICH, DAY, DEAN, FLANSBURG, LETTON and ROSE, JJ.

DEAN, J.

This is a suit for an injunction. Plaintiffs are members of the Royal Highlanders, a fraternal beneficiary association organized under the laws of Nebraska. It is required by statute to have a representative form of government. It has a lodge system with a ritualistic form of work. Its lodges are called "castles" and its laws "edicts." Its lawmaking body meets in regular session quadrennially. It raises funds to pay benefits and expenses by requiring members to pay assessments and dues. Defendants are its principal administrative officers and its executive committee. The purpose of the suit is to perpetually enjoin defendants from enforcing a new table of rates adopted by the supreme legislative and gov-

erning body of the association at a special session held
at Denver in October, 1919. The new rates increase
the assessments of plaintiffs and are alleged to be void.
On issues raised by the pleadings the parties were heard
by two district judges who dismissed the suit. Plaintiffs
have appealed.

The decisive point in the case is this: Did the representatives who were elected in 1917 as delegates to the
quadrennial session of the supreme executive castle of the
Royal Highlanders for that year, and who, on the call of
the executive committee, attended a special session of the
executive castle in 1919, have the power at that session to
adopt the new table of rates, then adopted, of which complaint is made by plaintiffs? If the delegates were not
clothed with such power the judgment should be reversed
and the injunction be made perpetual, and if for that reason reversed, further discussion of other contested
features is needless.

The lodge system of the Royal Highlanders is composed
of tributary castles, representative castles, and the executive castle. The tributary castles, many in number, are
the local lodges and they elect delegates to 25 representative castles. The latter elect delegates to the executive
castle which is the supreme legislative and governing
body of the association. The statute and the edicts require a session of the executive castle as often as once
in four years.

Judged by an edict that the Royal Highlanders adopted
in 1901, and that was in full force and effect in 1919, it
seems clear that the called special 1919 session of the
Royal Highlanders that met at Denver and adopted the
rates and made the changes that are in issue here was
without power to do so. The edict in question provides
generally that the power of the "representative castles"
with respect to the election of representatives shall be:
"To elect representatives to the executive castle to serve at
the next session thereof, and to elect alternates for such
representatives to serve in the event of the inability of

the representatives to attend." Section 70, Original Edicts 1901.

Section 70 was effective continuously from the date of its adoption in July, 1901, until and including October, 1919, when the representatives who were elected to serve at the regular quadrennial session of the executive castle in 1917 were called by the executive committee to assemble in special session in 1919. In October of that year the representatives, so called in special session, went through the form of amending the edicts and of adopting the rates in question here and of which complaint is made by plaintiffs. Under section 70 it seems clear that the official terms of the representatives who attended the special session in 1919 expired with the adjournment of the preceding regular quadrennial session in 1917, to which they had been elected. It follows, as we have seen, that the delegates were therefore without power at the called special session to perform any legislative or executive function or to adopt a new table of rates. The defendant society argues to the contrary.

An edict was adopted by the defendant society in 1897 that, but for the fact that it was amended in 1901, or perhaps superseded is a better term, would have given to the representatives in 1919 the power to amend the rates. The 1897 edict provides generally that the delegates to the executive castle shall be elected from the membership of each respective district, "to represent such district at the following regular convention of the executive castle, and all special conventions of the executive castle, until their successors are elected and qualified." Section 94, Original Edicts 1897.

It will be noted that section 70, that is in effect amendatory of section 94, merely provides that the representatives shall be elected "to serve at the next session," and that it omits the following words that are found in the repealed section 94, namely, "and all special conventions of the executive castle."

There must have been, there doubtless was, a reason

Widener v. Sharp.

for adopting the 1901 amendment. Why it was adopted is perhaps not necessary to inquire. It is sufficient that the amended edict was adopted and that it was in full force and effect in 1919. It appears too that at least three quadrennial sessions of the Royal Highlanders were subsequently held and section 70 of the 1901 Original Edicts remained unamended and unrepealed. By the adoption of section 70 a material change was deliberately made, with respect to the duration of the official term of office of the elected representatives, that did not theretofore exist. It follows that the society, and the defendants, were bound by its provisions until it was lawfully changed. Clearly it was the intention of the authors of the amendment that the former rule, with respect to the holdover privileges of elected representatives, should no longer obtain. It is evident that the adoption of the amended section was not an accident.

It may be observed in a general way, and merely as illustrative of the point, that a litigant in a law action, for obvious reasons, might not care to have his case tried to a jury that had been selected two years, or even two weeks, before his case is to be called for trial. And doubtless, by the same token, and for obvious reasons too, the representatives to the 1901 executive castle deliberately concluded that four continuous official years of the same representatives in office, with power unlimited for special sessions of the executive castle, might not inure to the good of the order.

Had edict numbered 94 not been supplanted by edict numbered 70, plaintiffs would have had no cause for complaint with respect to the legality of the 1919 session. The fact is apparent that the 1917 representatives in 1919 attempted to effect a vital change in the policy of the Royal Highlanders under authority of a repealed edict that had not been in force for about 16 years. It seems clear that the executive committee was without authority to summon the representatives who were elected in 1917, for the convention of that year, to meet in special session

in 1919. The delegates who responded to the call in 1919 could not lawfully serve at that session, for the reason that direct and explicit authority to do so was long before repealed.

With respect to the status of the 1919 executive castle, and its authority to adopt the rates in question, defendants draw attention to section 7 of the 1913 Original Edicts. So far as applicable here it reads: "The executive castle shall have jurisdiction over all members of the fraternity and over all representative and tributary castles instituted and governed by its laws, and the term of its existence shall be perpetual." In their brief defendants contend that the following words in section 7, namely, "and the term of its existence shall be perpetual," negative the assumption that the term of office of the representatives of the executive castle of 1917 terminated upon the adjournment of the regular session in that year. They argue: "If such adjournment vacated the offices of the executive castle representatives, the existence of the executive castle would not be perpetual, as is provided in said section 7 of the edicts."

It will be presumed that the ordinary and usual meaning of the word "perpetual" in section 7 was intended. Following is a standard definition: "Never-ceasing, continuing forever or for an unlimited time; unfailing; everlasting; continuous." Webster's New International Dictionary. Another definition of "perpetual" follows: "Continuing forever in future time; destined to continue or to be continued through the ages; everlasting; as, a perpetual statute." Century Dictionary and Cyclopedia, vol. 7. It is, of course, common knowledge that, as applied to corporations generally, a by-law that purports to provide for perpetuity cannot insure perpetuity. To illustrate: A common expression in the organization of corporations is that they shall continue for a designated number of years. But it does not follow that the continued existence of the corporation is thereby assured for the designated length of time.

Section 31, Original Edicts 1896, provided for the calling of special conventions "by the most illustrious protector at any time and place, when requested to do so by a majority of all tributary castles." That section was amended in 1897 by the adoption of section 28, so that under it the most illustrious protector of the Royal Highlanders could call a special convention "when requested to do so by the high prudential chiefs." The edict, as now in force, and which was in force in 1919, was again amended in 1901, and provides: "Special sessions of the executive castle shall be called by the most illustrious protector at any time and place, when he deems it necessary to do so, or upon the request of two-thirds of the executive committee; such special sessions to have all the powers of regular sessions, except as herein restricted." Section 11, Original Edicts 1901.

There is, however, no edict providing for the election of representatives to a special convention. It follows that section 11 is without force. Standing alone, as it does, it is ineffective for any purpose. In this respect, and as illustrative merely, it may be likened to a constitutional provision that is not self-executing and that requires an act of the legislature to make it operative. Again to illustrate: A penalty could not lawfully be imposed for the violation of a criminal statute unless the legislature fixed a penalty for such violation. Whether under section 11 representatives could lawfully have been elected at a special election to serve as representatives at a special convention, under a call duly made by the most illustrious protector of the Royal Highlanders, is not presented by the record, nor is it discussed in the brief. We do not therefore decide the question. The authorities cited by defendant with respect to the holdover privileges of those who are elected to office generally, and for the most part to public office, to which no successor has been elected or appointed, do not, in view of the record and of the premises, seem to be applicable to the facts before us.

We conclude that the delegates elected to serve at a

regular quadrennial session of the supreme legislative and governing body of the Royal Highlanders were not, under the edicts of the society, clothed with authority to serve at a special session holden two years later, where no provision was made for election of delegates to a special session. That the Royal Highlander society was without power to legislate or to adopt the new table of rates that is complained of by plaintiffs sufficiently appears.

Where the executive officers of a fraternal beneficiary society are about to enforce certain rates that have been adopted at a special session of the supreme governing body of the society, and it appears that no provision has been made by the society for electing the delegates who adopted the rates, such executive officers will be enjoined from enforcing such rates on application by a member of the society who is aggrieved. Other questions are presented by the briefs that, in view of our conclusion, we do not find it necessary to discuss, nor to decide.

The judgment of the district court is reversed and remanded, with directions that the injunction be made perpetual.

REVERSED.