W. E. SHARP ET AL V. STATE OF NEBRASKA.

FILED FEBRUARY 27, 1923.   No. 22695.

1. **Injunction:** VIOLATION: ABETTORS. A person bound to obey an injunction should not be permitted to evade responsibility for its violation when he has aided or abetted others in violation thereof.

2. ————: ————. In determining whether a party is responsible for the violation of an injunction, one of the tests is, whether the

course of action pursued by him was intentionally instrumental in causing a breach of the mandate.

3. ———: ———. Injunction orders must be fairly and honestly obeyed, and courts will not look with indulgence upon schemes or subterfuges, however devised, designed to thwart their decrees.

4. Pleadings and evidence examined, and *held* sufficient to sustain the judgment.

ERROR to the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Hainer, Craft & Lane* and *O. B. Clark,* for plaintiffs in error.

*J. C. McReynolds, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., RAPER and TROUP, District Judges.

RAPER, District Judge.

In obedience to a mandate from this court, in the case of *Widener v. Sharp,* 106 Neb. 654, the district court for Lancaster county, on the 21st day of November, 1921, entered a decree enjoining the defendants, and their attorneys, agents and successors in office from in any wise enforcing against the plaintiffs the new table of rates adopted by the supreme legislative and governing body of the Royal Highlanders at a special session held at Denver in October, 1919.

December 17, 1921, the plaintiffs filed a motion in the district court for an order citing the defendants and O. B. Clark and B. L. Starboard for contempt for disobedience of the decree. With said motion were also filed affidavits of Gottlieb J. Wenninger and William Widener, plaintiffs, and Homer C. VanBoskirk, A. H. Vanlandingham, and J. C. McReynolds, who were not named as parties to the suit, but are members of the Royal Highlanders. The affidavits set out various acts of O. B. Clark and B. L. Starboard, who are respectively the secretary-treasurer of Bonnie Doon Castle and Moray Castle, of the Royal Highlanders, in effect, charg-

ing these secretary-treasurers, as agents and employees of the defendants, and the defendants with collecting the enjoined rates from the affiants. The court thereupon issued a citation to the defendants W. E. Sharp and F. J. Sharp and their agents for collection of assessments, O. B. Clark and B. L. Starboard "for wilfully and contumaciously violating the order of injunction," which citation was duly served upon the four persons named therein. They filed an answer in which is set forth their respective duties as officers of the order, denying that either of the parties was agent of either of the other parties, and denying that they collected the enjoined rates from either of the affiants; alleging that the payments received were voluntarily paid by the affiants, and asserting that they have in good faith, fully and fairly complied with the terms of the injunction, both in letter and spirit. A trial was had, evidence taken, and on the 17th day of January, 1922, the court discharged O. B. Clark and B. L. Starboard; found defendants W. E. Sharp and F. J. Sharp guilty, assessed a fine of $500 on each, to be paid at the end of one year, and provided that if they cause to be conveyed through three successive issues of the Royal Highlander a plain and specific statement that by the holding of the court the collection of rates made in Nebraska from November 21, 1921, to December 27, 1921, inclusive, was not authorized as to the excess over the certificate rates, and will be returned if personally demanded by those who paid them, and provided further that if the defendants repay, or cause to be repaid, such excess upon such demand, and make due proof thereof to the court by affidavit, then and in such case they shall be deemed to have purged themselves of such constructive contempt and their fines shall stand remitted. The defendants Sharp filed motions for new trial, which were overruled, and they bring error to this court.

The finding of Judge Shepherd gives a clear and comprehensive review of the situation as developed, so it

seems advisable to give a considerable portion herein:

"The opinion of the supreme court is to the effect that the 1919 rates were without authority and therefore without force. It directed this court to enjoin the defendants from enforcing said rates. This means from keeping such rates in force or collecting the same. Considering that the supreme court declared these rates a nullity, it seems reasonable that it meant just about this by the language which it employed. We hold that such was the meaning of 'enforcing' as used in the mandate and in the injunction which we entered in obedience thereto.

"Defendants held their 1921 convention after the opinion in question had been handed down. Said convention passed an edict reenacting the 1919 rates and providing for a new and higher rate after January 1, 1922, and providing further that if members acquiesced by paying the 1919 rates for the remainder of the year, or by written acceptance of the same, they might continue on the 1919 rates and not be subject to the new ones. However, the edict could not be effective until December 27, 1921, because of the limitation of the statute.

"Thereupon they proceeded to collect the condemned rates of 1919 as before the opinion and injunction, though claiming to do so under the reenactment of 1921, and continued to so collect even after the injunction throughout the entire months of November and December and up to the time of the trial of this contempt proceeding. They did not compel the membership to pay these rates by threat of forfeiture or otherwise. They did not dispute that the member had a right to pay the certificate rate if the question was raised. They received the certificate rate if it was tendered. But at least in one of the tributary castles the practice of the secretary was to turn to the edicts whenever a member came to pay, and say this is the rate. It followed that the ordinary uninquiring member paid the 1919 rate,

not from choice, not in a voluntary way, but as a result of a collection system employed by the defendants. Undoubtedly many throughout the state paid the proscribed rates in this way, believing that they must or should. This was a wrong attitude on the part of the defendants. It amounted, according to the view taken by the court, to an enforcing of the 1919 rates and to a violation of the injunction.

"The responsibility rests mainly upon the head officers, the executive castle, including W. E. Sharp, most illustrious protector, and F. J. Sharp, chief secretary, who are cited for contempt. They received account of the collections of the tributary castles. They had oversight of the order. The publication of the official organ of the society (The Highlanders) was in the hands of Secretary F. J. Sharp. He noted in it (July number) the decision of the supreme court declaring the 1919 rates as invalid, announced that application for a rehearing had been made, and stated that said rates would continue to be collected until final disposition of the case or until such rates were superseded by the edict. Subsequent issues, to be sure, gave the 1921 edict in full. But none of them gave any plain information as to the determination of the case in court and as to the protection afforded to the membership thereby. In fact, the October number issued at a time when the supreme court had said its final word and when the injunction of this court was imminent, announced in sterotyped form that the November assessment had been made and that members should pay, etc., precisely as through the months preceding, though in other parts of this issue the option of the new edict was explained and the membership was told how it might escape the higher rates of 1922 by paying the same old rates collected since April, 1920. By continuing the system the society and the defendants enforced the 1919 rates throughout November and December of 1921, and violated the injunction. Because of this, which the court finds as a matter of fact, the de-

fendants W. E. Sharp and F. J. Sharp, respectively most illustrious protector and chief secretary, are adjudged guilty of constructive contempt.

"It is insisted that the society had a right to give its members the option referred to, and that their acceptance of the same made a good contract. But, as the court views it, it did not and could not give such option before the 27th day of December, 1921. As the court views it, such a contract should be made only upon full disclosure of the standing of the 1919 rates and of the rights of the membership with respect to its payments made thereunder, so that members would know what they were giving up by the acceptance of such option. But, as a matter of fact, the society did not give any option to members when it was collecting November and December assessments up to December 27. It could not, because the edict did not and could not go into effect till said 27th day of December. It was conceivable at the time that the old rates were being collected for the months in question that the 1921 edict might never go into effect. There was no basis for such contemplated contract at the time that these collections were being made. Both authority and consideration were lacking to give it validity."

The first alleged error is that the affidavits in support of the motion for the citation do not contain facts sufficient to sustain judgment of guilt. In substance the affidavits state that the defendants Sharp, through their agents, stated to the two plaintiff affiants and two others that the rates they were collecting for the month of November, 1921, were the same as had been collected since April, 1920, and which were the enjoined rates, and the other affidavits show similiar demands and payments by other members of the order of Highlanders. The affidavits are sufficient; but, if there was a defect, the defendants waived it by answering to the merits without challenging the sufficiency of the complaint. 9 Cyc. 39. The court had jurisdiction of the de-

fendants. Plaintiffs in error contend that the court had no authority to hear and determine the rights of any members who were not in fact named as plaintiffs. While this may be the rule in certain cases, in others it has been held that any one who has a pecuniary interest may have relief by contempt proceedings. 13 C. J. 59, sec. 82. However, there arises no necessity for a determination of that proposition here, because there are two actual plaintiffs seeking the remedy, and the right of the court to take jurisdiction does not depend on the status of those affiants who were not originally plaintiffs.

Plaintiffs in error allege that there has been a change of conditions in the by-laws (edicts, as they are called) of the order which constitute a sufficient justification for disregarding the mandate of the injunction. Of course, there may arise a condition subsequent, or an express agreement, which will release the injunction, or a party by conduct may waive his right to have the mandate carried out. No authorities are needed to support this elementary principle. Many cases were cited in plaintiffs' brief, but none of them are applicable to the facts in this case. The opinion of the trial **judge clearly** states that there could have been no objection to a member paying the proscribed **rate, providing he understood** his rights and did it **voluntarily.**

It is urged that the evidence does not show any act of the plaintiffs in error which can be construed as "enforcing" the collection of the old rates. The word "enforce" is used in a multiplicity of ways and is given many shades of meaning and applicability. It does not necessarily imply actual force or coercion. It may mean to exact, to obtain authoritatively; to cause to have force or effect or to be executed; to put in execution; to cause to take effect. The trial court was justified in finding that the method used was in fact enforcing the collection of the old rates.

It is further contended that the secretary-treasurers of the subordinate lodges were not agents of the plain-

tiffs in error. We need not decide the proposition whether it was what may strictly be called an agency. These two chief officers had general charge and oversight of the affairs of the order, and must have known that the collectors were sending in the exact amounts of the enjoined rates. Mrs. Starboard evidently understood, for she so testified, that she was without authority until directed by the higher officers to make any rate other than contained in the edict (which was the old rate). It is a fair inference from the evidence that the plaintiffs in error knew of continued collection of the enjoined rates, and that they knowingly permitted it to go on for the purpose of evading the commands of the injunction. It was the duty of the plaintiffs in error to obey the spirit as well as the letter of the decree, and they cannot excuse themselves where they have knowingly permitted, or aided or abetted its violation by the subordinate officers of the castles or lodges. *People v. Pendleton,* 64 N. Y. 622; *Ex parte Miller,* 129 Ala. 130, 87 Am. St. Rep. 49; 22 Cyc. 1012; *Merchants Stock & Grain Co. v. Board of Trade of City of Chicago,* 201 Fed. 20.

The plaintiffs in error did not profit from the illegal collection, but this is immaterial; and perhaps, as suggested, the payment of the enjoined rates may have been to the advantage of the paying members; but that matter has no weight here, for such consideration was a matter wholly for the paying member. The court should look to the course pursued in ascertaining whether it was intentionally instrumental in causing the collection of the enjoined rates.

The district court provided a fair and inexpensive method by which the defendants can escape the payment of the fines, and if the plaintiffs in error are, as they assert, anxious to carry out the mandate of the injunction, they could long ago have had the fines remitted.

The judgment of the district court is

AFFIRMED.