Hillsborough, }
Nov. 3, 1931. }

JOHN G. WHITNEY *v.* MAURICE WATSON, *& a.*

*Wyman, Starr, Booth & Wadleigh* (*Mr. Wadleigh* orally), for the plaintiff.

*Omer H. Amyot*, (by brief and orally), for the defendants.

SNOW, J. Public Laws, c. 163, s. 8, subjects to a penalty "whoever goes about in carriages or makes a business of selling milk, skim milk or cream in any city or town," without a license obtained under the provisions of *sec.* 4 thereof which reads: "The boards of health of cities and the selectmen of towns may grant to any person who applies therefor and pays the sum of two dollars a license to sell milk, skim milk and cream within their city or town, until June first next following, and may renew such license annually in the month of May upon application and the payment of a like fee; provided, that said applicant will satisfy the board of health or selectmen that he understands the care and handling of said product, and files the name and address of all his producers, and gives reasonable assurance that the cows from which the milk is taken are healthy and are properly fed and cared for. Any person selling only the product of his own cows shall be exempt from paying any fee for such license."

The plaintiff owns and operates a milk farm in Bedford, six miles from the city of Manchester. He sells the product of his cows in bulk to a dealer in said city whose bottling plant is licensed by the board. Desiring to sell said product direct to consumers in Manchester, the plaintiff, on July 3, 1931, applied for a license under the statute. He filed his name and address, satisfied the defendants that he understood the care and handling of said product, and gave them reasonable assurance that the cows from which the milk was to be taken were healthy and properly fed and cared for. The defendants refused to grant a license for the combined reasons that the plaintiff's plant was outside of Manchester, and he did not hold a license on March 26, 1928, on which date the board had voted "that no more distributors' licenses to sell milk in Manchester be granted to non-residents of Manchester; ... This vote is not to affect licenses in

force at this date." The board has since granted licenses, which are still in force, to other non-residents of Manchester whose plants are farther removed from the city than those of the plaintiff. It is understood, however, that these are renewals of licenses held on March 26, 1928, and that the board, both in granting such renewals and in denying the plaintiff's application, consistently applied the rule laid down in its said vote. The question presented, therefore, is whether the adopted rule is a valid regulation under the statute.

The manifest purpose of the statute is to protect the public health. The power of the legislature to so regulate the sale of dairy products as reasonably to insure their purity is not open to doubt. *State* v. *Campbell*, 64 N. H. 402; *State* v. *Ball*, 70 N. H. 40; *State* v. *Marshall*, 64 N. H. 549, 551, 552. Nor is any question raised as to the reasonableness of the three conditions which the statute imposes upon the granting of licenses.

The contention of the defendants that the conditions laid down by the statute as prerequisite to granting a license, being preceded by the word "may" instead of "shall," are merely minimum requirements to which the board in its discretion may add others cannot be maintained. An unguided and unrestrained discretion in the board would make the act unconstitutional. *Hanover Precinct* v. *Atkins*, 78 N. H. 308, 310; 12 A. L. R. 1436; 54 A. L. R. 1104. It is because the statute does direct and limit the action of the board that the act can be justified. *Sundeen* v. *Rogers*, 83 N. H. 253, 260, 261. It is true that the legislature might have authorized the boards to make uniform and reasonable rules designed to carry out the purposes of the statute. *State* v. *Normand*, 76 N. H. 541, 543, 545. Instead, it saw fit to specify definite conditions controlling their action. See *State* v. *Cohen*, 73 N. H. 543, 546. The requirements having been fixed by the legislature, the function of the board is limited to determining whether the applicant complies therewith. *Douglas* v. *Noble*, 261 U. S. 165, 167, 169, 170. It may not arbitrarily impose a limitation not authorized by the statute. *Id.*; *Picone* v. *Comm'r of Licenses*, 241 N. Y. 157, 161; *Larkin Co.* v. *Schwab*, 242 N. Y. 330.

It is a familiar rule of statutory construction that the word "may" shall be construed to mean "shall" when such appears to be the intention of the legislature. Instance, P. S., c. 124, s. 1; *State* v. *Cohen, supra*, 544, 547; *Silverman* v. *Gagnon*, 74 N. H. 502, 503; *Mushlin* v. *Rowell*, 77 N. H. 183. The typical case for the application of the rule is one where the public interest and right are concerned and the public or third persons have a claim *de jure* that the

power shall be exercised. *Blake* v. *Railroad*, 39 N. H. 435, 437; *Rogers* v. *Bowen*, 42 N. H. 102, 107; *Robertson* v. *Railroad*, 63 N. H. 544, 548. Such a situation is presented here. Dairy products are normally legitimate subjects of commerce, interference with which is justifiable only so far as the protection of the public health requires. To that extent the legislature may regulate and limit their sales. Beyond this, the marketing of such products is a matter of right. It is in the interest of the purchasing public as well as of the producer that a license be granted the latter when he has fulfilled the legislative requirements. The argument that the substitution here, of "may" for "shall" in the parent act (Laws 1883, c. 42) imports an enlarged discretion loses force when we consider that the grant of licenses under the earlier statute was authorized subject to no proviso or limitation, while here, as we have seen, the word precedes a definite specification of the prerequisite conditions. It was the intention of the legislature to make the issue of licenses mandatory when the conditions have been complied with.

The contention of the defendants in support of the rule is based upon the claim that examinations of the plants of applicants are essential to the performance of their duties; that without such examinations the protection intended by the statute would be ineffective; that the finances of the board do not permit the hiring of sufficient personnel to properly investigate and supervise plants without some limitation as to distance. Such were the underlying reasons for the 1928 rule. This contention presents the question whether the board has authority to prescribe geographical limits within which the applicant's plants must be located.

The statute imposes upon the boards of health of cities and the selectmen of towns the duty of determining whether or not the applicant has an understanding of the care and handling of his product and possesses a healthy well nourished herd under proper care. This duty, although imposed upon administrative bodies, is *quasi* judicial in nature. *State* v. *Cohen*, 73 N. H. 543, 546, 547; *Hart* v. *Folsom*, 70 N. H. 213, 217; *Meredith* v. *Fullerton*, 83 N. H. 124, 129; *Silverman* v. *Gagnon*, 74 N. H. 502, 503. Its performance requires weighing and drawing reasonable deductions from the facts disclosed on investigation. It does not follow from the incapacity of the board to add to the statutory conditions limiting its action that it may not adopt reasonable rules to guide it in its performance of its judicial duties. *Douglas* v. *Noble, supra*. On the contrary, the board may prescribe rules as to the time, place and extent of hearings on applications, and

fix the minimum requirements as respects the character and quantity of evidence. The only limitation is that such rules shall be uniform and reasonable. Such regulations are not the imposition of additional conditions upon an applicant to receive a license, but permissible procedural rules incidental to the discharge of the duties imposed upon it.

The statute provides for a license to remain in force until the June following its granting, and annual renewals thereof thereafter. The requirement that the applicant give the board "reasonable assurance that the cows from which the milk is taken are healthy and are properly fed and cared for," necessarily means an assurance, not only as respects conditions at the instant of the grant, but as to their probable continuance during the term of the license. The power given the board to revoke licenses "at any time for cause" (s. 6) discloses a purpose to bestow upon the board a more or less continuous oversight. In the performance of the judicial task of finding whether an applicant's herd and plant comply with the required standards, the board is not limited to receiving oral proof at its office in Manchester. If a physical examination of the herd and plant would be helpful in determining their fitness it may require a view. If, as the defendants claim, such an examination is essential in all cases the requirement may properly be the subject of a rule. The expediency of such a rule, so long as it is reasonable and uniform, is a question for the tribunal charged with the judicial duty.

It is manifestly impossible to bring the applicant's plant to the board. If the assurance provided by the statute cannot be had without a view and physical examination thereof, it is obvious that some limitation of the area in which they are to be had and conducted must have been contemplated. It would seem that the board, as an incident to the performance of its duty, must have power to determine, as a practical matter, what that limitation is. In other words, a reasonable boundary of the area within which the board shall be required to sit in its investigation of the facts was impliedly intended. The legislature meant to enact a workable law, and therefore to impose such a limitation of the field of its operation as permits of the supervision for which it provides without unreasonable expense. *State* v. *Hoyt*, 84 N. H. 38, 41. The search, however, being for the line limiting the area of practical administration, the city boundary, considered alone, has no significance. Distance, moreover, may not be the test. Topographical, transportation and other conditions may figure in the problem. What are the reasonable limits under all the conditions is

a question for the board, subject to revision by the court if not fixed by the exercise of a reasonable discretion.

As the rule, however, by its terms as well as by practical construction, authorizes the issue of licenses to some non-residents it cannot be construed as a finding that the bounds of Manchester limit the field of practical administration. As the rule can be sustained on no other basis its invalidity follows.

Moreover the rule is invalid, as respects the plaintiff, because it limits the issue of non-resident licenses to such applicants as already held them. While knowledge of an applicant and of his products, gained by observation of the conduct of his business under past licenses, may be valuable evidence bearing on his fitness and that of his herd, it is clear that mere priority in the field affords no conclusive test of such qualifications. The limitation is an arbitrary discrimination. It accords different treatment to persons similarly situated. A statutory rule to the same effect would have been in conflict with both the state and federal constitutions. *State* v. *Hinman*, 65 N. H. 103, 104, 105; *State* v. *Pennoyer*, 65 N. H. 113, 117; *Williams* v. *State*, 81 N. H. 341, 352.

As it is conceded that the plaintiff has complied with all the conditions prescribed in the statute he is entitled to a license.

*Exception overruled.*

All concurred.