[Civ. No. 6708. Third Dist. Aug. 29, 1942.]

MERIDIAN, LTD. (a Corporation) et al., Appellants, v. DR. JOHN J. SIPPY, as District Health Officer, etc., Respondent.

Lafayette J. Smallpage and Forrest E. Macomber for Appellants.

Earl Warren, Attorney General, W. T. Sweigert, Deputy Attorney General, as Amici Curiae, on behalf of Appellant.

Louttit, Marceau & Louttit for Respondent.

F. Bert Fernhoff, City Attorney (Oakland), and Homer Buckley, Assistant City Attorney, as Amici Curiae, on behalf of Respondent.

ALLEN, J. pro tem.—This is an action for a judgment declaring petitioner's rights and duties with respect to respondent in relation to a certain ordinance of the city of Stockton. The petitioners assert that certain provisions of said ordinance are invalid. The trial court upheld the validity of such ordinance, and from this judgment petitioners have appealed.

The facts are undisputed. Meridian, Ltd., a corporation, appellant, is the owner of a ranch known as "El Solyo" located principally in Stanislaus County and partly in San Joaquin. It owns and operates a dairy, the buildings whereof are located in Stanislaus County, approximately four or five miles from the southern boundary of San Joaquin County. This dairy is engaged in the production and sale of Grade A milk, and the dairy buildings and the dairy herd are all maintained and operated in compliance with all requirements of the State Department of Agriculture and the ordinances of San Joaquin County. Respondent Sippy is the district health officer of San Joaquin Health District. This district was created under the Local Health District Act of 1917, and its boundaries are identical with those of San Joaquin County. The city of Oakland, the city and county of San Francisco, and the city of Los Angeles, all maintain a milk inspection service approved by the Director of Agriculture of the State of California, and each of said milk inspection services has issued appellant Meridian, Ltd., a permit under the provisions of the Agricultural Code, and said permits are still in force. The San Joaquin Local Health District also has a milk inspection service approved by the Department of Agriculture.

The ordinance in question, No. 1229 of the city of Stockton, was enacted in 1931. Section 1 thereof designates the

district health officer of the San Joaquin Health District as "health officer" of the city of Stockton. Section 5 requires every person engaged in the production, processing, or distribution of milk for retail redistribution, to obtain a permit from the health officer before selling, distributing or offering for sale any milk in the city of Stockton. It also provides that "In no case shall a permit be issued to any person, firm, association or corporation to sell . . . any milk in the city of Stockton unless the dairy, source of supply or place of origin is regularly inspected by the health officer or his authorized representatives." Such ordinance also requires higher standards for the grades of market milk than those required by the Agricultural Code.

Appellant "Cloverleaf Farms" is a limited partnership and maintains and operates a pasteurizing, processing and milk distributing plant in the city of Stockton and holds permits issued by the Director of Agriculture and the city of Stockton. Appellant, Meridian, Ltd., is selling Grade A market milk in the city of Oakland and delivering market milk for sale to Tracy for pasteurization and cream separation and thereafter for distribution in San Francisco, Oakland, Tracy and elsewhere.

Section 491(b) of the Agricultural Code, as amended in 1939, provides that whenever a producer or distributor of milk sells or delivers within the jurisdiction of two or more cities, the Director of Agriculture, after an investigation and consultation with the health officer of each city and county involved, shall designate a county or city to conduct dairy and milk plant inspection. It further provides that:

"All market milk and dairy products so inspected may be sold and delivered within the jurisdiction of any county and city; provided, that applicable local ordinances of such county or city are not thereby violated. The county or city designated by the director to render such inspection shall enforce all applicable local ordinances of each county and city into which such market milk and dairy products are sold or delivered."

In compliance with the foregoing provision, the Director of Agriculture made an investigation and consulted with the health officers of the above-mentioned cities and also with the health officer of the city of Stockton, and thereupon designated and appointed the health officer of the city of Oakland to conduct the dairy inspection of the appellant Meridian, Ltd. The permit said appellant now holds was issued by such authority.

This appellant desires to deliver milk from its dairy to appellant, "Cloverleaf Farms" for pasteurization in the city of Stockton and thereafter for resale through said "Cloverleaf Farms" and other authorized distributors in Stockton holding valid permits, and said "Cloverleaf Farms" desires to receive and purchase such milk. Petitioners made application to respondent for forms for a permit as provided in Ordinance No. 1229, but respondent refused to issue such forms or permits for the reason that appellant's Meridian, Ltd. dairy, the source of the supply of milk, was not regularly inspected by the district health officer of San Joaquin Local Health District, who is also the health officer of the city of Stockton. The district health officer of San Joaquin Local Health District does not inspect dairies beyond the external boundaries of his district which are identical with the boundaries of San Joaquin County.

As a result of this Ordinance No. 1229 of the city of Stockton, no dairy, although approved by the Director of Agriculture, may bring any market milk from outside the boundaries of the county of San Joaquin and sell in the city of Stockton. The effect of the ordinance is absolutely prohibitive.

Respondent maintains that the ordinance is valid as a reasonable exercise of the city's police power to protect and maintain the public health of its inhabitants. He claims that as section 451 of the Agricultural Code provides that "no provision of this division . . . or any rule and regulation of the director is a limitation on the power of a municipality or county to provide for reasonable additional regulations not in conflict therewith requiring standards higher than the minimum requirements for the grades of market milk established in this division," therefore this statute expressly authorizes the city to "require higher standards" and that the Stockton ordinance has done this. He further maintains that it would be idle to require "higher standards" without having some way of checking or method of inspection to determine whether or not the "higher standards" are being maintained, and that inspection is an incidental power necessary to the exercise of the right to have "higher standards"; that the approved and efficient method of milk inspection requires that it be made at the dairy or source of its origin, which makes it necessary that a reasonable boundary of an area within which the inspection may be made, be established, which is the only proper method, and one that has been

approved by the courts (citing *Whitney* v. *Watson*, 85 N. H. 238 [157 Atl. 78]) ; that to require any municipality to inspect any dairy wishing to supply its inhabitants with milk located anywhere between Siskiyou and San Diego would make efficient inspection impossible, and that therefore definite and reasonable areas are necessary; that the city cannot be required to go beyond this area and inspect (citing *Witt* v. *Klimm,* 97 Cal. App. 131 [274 Pac. 1039]), and that, because of administrative necessity, innocent and harmless products may be excluded, does not render the ordinance unconstitutional (citing *Carolene Products Co.* v. *Harter,* 329 Pa. 49 [197 Atl. 627, 119 A. L. R. 235]) ; that Stockton is a charter city and the Constitution has conferred upon it full power, unhampered by acts of the Legislature, to legislate upon its own local "municipal affairs," and that the enforcement of its own ordinance for the protection of the health of its own inhabitants is such a municipal affair; that the Constitution of California (§ 6, art. XI) particularly provides that cities and towns are "empowered . . . to make and enforce all laws and regulations in respect to municipal affairs"; that section 491(b) of the Agricultural Code, *supra,* cannot be construed to conflict with the constitutional provision giving cities the right to enforce their ordinances relating to "municipal affairs"; that it is more reasonable to hold that the state, after the amendment giving municipalities the right to require higher standards, withdrew from the field of inspection in such cities as may have established higher standards.

These contentions all seem very plausible and logical and are supported by much respectable authority, but we believe that respondents take too limited a view of this important matter. If the position of respondent is sound, it may lead to dire results. It would be possible for every city in the State of California to erect prohibitive trade barriers around the boundary of the county of its locale; not only milk, but many other food products designed for human consumption could be barred in this same manner. The free flow of goods from one community to another is conducive to the general prosperity and economic welfare of the state and nation. Furthermore, milk production is a legitimate business; millions of dollars in this state are invested in this industry, and so long as the persons engaged in this business put out a clean, pure and wholesome product, a way should be found to allow their products to flow freely in the market, unburdened by

duplication of inspection and prohibitive trade barriers, and if the present law on our statute books can be given a reasonable construction which will bring about this result, it should be given such construction.

It is now generally recognized that the dairy and milk production business is essentially one which is affected with a public interest, and as such is subject to governmental regulation. (22 Am. Jur. 851.) Because of this, many laws have been passed by most states in the Union and held not to be in violation of the Constitution providing for control of milk and its price, and for inspection and certification. In California, a general dairy law was passed in 1923. (Stat. 1923, p. 849.) This law did not purport to cover the entire field of milk production and distribution. It was expanded by amendment. However, until 1937, the state did occupy the whole field of milk inspection and distribution. (*Pacific Coast Dairy* v. *Police Court*, 214 Cal. 668 [8 P. (2d) 140, 80 A. L. R. 1217].) All parties practically agree on this point. A well-considered superior court decision in Los Angeles in 1935 (*Pater* v. *City of Los Angeles*) so held, and in recognition of the soundness of this decision the law was changed in 1937 by amending section 451 of the Agricultural Code, which authorized municipalities to provide higher standards for grades of market milk than that provided by state law. It did not expressly relinquish any other power. It only permitted municipalities to pass ordinances "to provide for reasonable additional regulations . . . requiring standards higher than the minimum requirements for the grades of market milk established in this division." This amendment also provided that this relinquished right must not be in conflict with Division IV of the Agricultural Code. Therefore, assuming that this amendment did give the municipality the incidental right to set up its own dairy system of inspection, this inspection must not be in conflict with the code.

Being a matter of general concern, this relinquished right could be reasserted by the state at any time. If it did not do so before, it did reassert it when, in 1939, section 491 of the Agricultural Code was amended and section 491(b), *supra*, was added. This section now specifically deals with dairy inspection and provides that whenever a producer or distributor delivers or sells milk within the jurisdiction of two or more cities or counties, the Director of Agriculture, after an investigation and consultation with the health officers

of each county and city involved "shall designate the county or city which shall conduct the dairy and milk plant inspection." Thus it reoccupied this field of inspection, and declared that "milk and dairy products so inspected may be sold and delivered within the jurisdiction of any county and city." Section 5 of Ordinance No. 1229 is in direct conflict with this because it states "in no case shall a permit be issued . . . to sell or expose for sale or exchange . . . any milk in the City of Stockton unless the dairy . . . is regularly inspected by the Health Officer" of the city of Stockton.

It is true that section 491(b), *supra*, provides that milk inspected by the authority of the director may be sold in any county or city provided the local ordinances of such county or city are not thereby violated, but it also provides that the county or city designated by the director to render such inspection shall enforce all applicable local ordinances of each city and county into which such market milk and dairy products are sold or delivered. Thus if a state permittee sells milk in a city having local ordinances fixing "higher standards," he must comply with these standards, and the state inspector is directed to enforce them. Therefore, the state law provides a method which permits the free flow of whole milk into the market without unnecessary duplication of inspection without depriving the cities having higher standards of their full protection. This inspection by the designated health officer is state inspection. (*LaFranchi* v. *City of Santa Rosa*, 8 Cal. (2d) 331 [65 P. (2d) 1301, 110 A. L. R. 639] ; *Peterson* v. *Board of Supervisors of Solano County*, 65 Cal. App. 670 [225 Pac. 28].) It must be presumed this officer will do his duty.

To give effect to section 491(b), *supra*, we must consider the section as a whole. "To enforce" a law usually means to cause the arrest and to coerce by "actual force and punishment," but it does not necessarily imply this; it may mean "to give effect to, to cause to have force." (*Widener* v. *Sharp*, 109 Neb. 766 [192 N. W. 726].) Section 491(b) deals with permits and it must mean that in issuing those permits the state "will give force to" local ordinances or "give effect to them"; therefore, that no permit will issue to sell milk in Stockton unless the municipal standard of requirements be so maintained. The coercion and force to be applied to violators still lies with the city. If there were no general law on the subject giving to the people of the city of Stockton the protection of its high standards required by

its ordinance, it might be reasonable to hold that Stockton or any other municipality, for the protection of the health of its inhabitants, could establish a reasonable inspection area; but the general law gives the state no right to issue a permit to sell or distribute milk in the city of Stockton, unless the permittee meets the standards of its ordinance. Therefore, it is unreasonable to require double inspection of the distributors, one by the city and another by the state, and also to require that the milk so distributed originate in San Joaquin County.

 Any ordinance or statute which prevents any person from engaging in a lawful business cannot be upheld unless protection of life, health or property makes it reasonably necessary. Such is not the case here. The contention of respondent if approved might result in the erection of trade barriers that would affect the economic prosperity of the whole state.

The judgment is reversed, and that portion of section 5 of Ordinance No. 1229, which reads, "In no case shall a permit be issued to any person, firm, association or corporation to sell or expose for sale or exchange, deliver or distribute any milk in the City of Stockton unless the dairy, source of supply or place of origin is regularly inspected by the Health Officer or his authorized representatives," is held to be invalid; and petitioners are declared to have a right to carry on their respective businesses in the city of Stockton, upon compliance with the terms of the Agricultural Code, and the higher standards required by said ordinance.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied September 26, 1942, and respondent's petition for a hearing by the Supreme Court was denied October 26, 1942.