[Civ. No. 50144. Second Dist., Div. Five. Mar. 7, 1978.]

J. A. MEYERS & COMPANY et al., Plaintiffs and Appellants, v.
LOS ANGELES COUNTY PROBATION DEPARTMENT et al.,
Defendants and Respondents.

310

COUNSEL

Greene, Kelley & Tobriner, Sheldon L. Greene and Gordon H. Rubin for Plaintiffs and Appellants.

John H. Larson, County Counsel, and Leslie C. Randall, Deputy County Counsel, for Defendants and Respondents.

OPINION

HASTINGS, J.—Plaintiffs-appellants J. A. Meyers & Company (JAMCO) and Eleanor Meyers filed a second amended complaint for money damages, alleging negligence on the part of defendants-respondents Los Angeles County Probation Department and certain of its employees Jacques A. Ellis (Ellis) and Hilary J. Laz (Laz) for failing to warn plaintiffs that Jerome Klein (Klein), a probationer, was a convicted embezzler, thus enabling Klein to embezzle funds from them.

Defendants' general demurrer was sustained without leave to amend, and dismissal of the action was entered accordingly.

On July 1, 1974, Klein, pursuant to his own efforts[1] was hired as an assistant to the president of JAMCO. Two months later, he was appointed to the position of executive vice president. When hired, he was on probation following a criminal conviction for larceny and embezzlement.[2] Francis Meyers, President of JAMCO, personally called business references in New York and Los Angeles which Klein had supplied upon employment. These companies all verified Klein's employment with them and confirmed his representations regarding his skill and experience in the business world. No references were made to Klein's history of fraud by these contacts.[3] The record is silent on any verification that might have been made regarding his alleged financial contacts (see fn. 1). Plaintiffs were unaware of Klein's history of fraudulent conduct. Defendants, of course, knew of Klein's prior criminal record involving similar crimes.

Klein advised his probation officers Laz and Ellis that he had taken a position in sales with JAMCO, but that he had not told his new employer of his criminal record and probationary status. Laz and Ellis did not divulge their identities to JAMCO when they called the company to verify his employment, nor did they reveal Klein's probationary status. JAMCO suffered losses through Klein's embezzlement of approximately $100,000.[4]

■ Under the common law, as a general rule, one person owed no duty to control the conduct of another, nor to warn those endangered by

---

[1]Klein represented himself to JAMCO as having substantial business acumen and experience. He claimed to have extensive business and financial contacts giving him access to loan funds and investment capital.

[2]The conditions of probation included: (1) Serve the first year in the county jail; (2) Make restitution through the probation officer in such amount and manner as the officer shall prescribe; (3) Have no blank checks in possession, nor write any portion of any checks, nor possess bank account upon which checks may be drawn; (4) Seek and maintain training, schooling or employment as approved by the probation officer; (5) Maintain residence as approved by the probation officer; and (6) Obey all laws, orders, rules and regulations of the probation department and of the court.

[3]There is nothing in the record to indicate he listed as references any companies that he had defrauded. It seems unlikely that he would have done so.

[4]There is no evidence in the record that any of this money was deposited by Klein with the county probation department for restitution purposes. At oral argument before us counsel could not answer our questions about this possibility.

such conduct absent some special relationship to either the person whose conduct needs to be controlled or to the foreseeable victim of that conduct. (*Tarasoff* v. *Regents of University of California,* 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334].) ■ Plaintiffs claim they have pleaded such a special relationship; therefore, the court erred in sustaining the demurrer to the second amended complaint without leave to amend.[5] They rely primarily on two cases that they believe are controlling: *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], and *Tarasoff, supra.* In *Johnson,* a 16-year-old boy, placed in a foster home by a state agency, attacked and injured a foster parent. The court first addressed itself to the problem of immunity granted to the state and its employees under Government Code section 845.8 (see fn. 6, *infra*). The court held that the acts of the government agents in implementing the minor's parole up to the placement of the minor in the foster home were protected under section 845.8, but that the immunity ended once the decision was made to place the minor with the Johnsons. The court said at page 799: "But, although section 845.8 requires that each member of the general public who chances to come into contact with a parolee bear the risk that the rehabilitative effort will fail, nevertheless well-intentioned foster parents, whose direct and continuous contact with the parolee drastically increases the dangers to them, need not go without a remedy. Once the proper authorities have made the basic policy decision—to place a youth with foster parents, for example—the role of section 845.8 immunity ends; subsequent negligent actions, such as the failure to give reasonable warnings to the foster parents actually selected, are subject to legal redress."

Later, in *Tarasoff,* the court applied the doctrine to a different situation: Therapists at a state-owned hospital were treating a mentally ill patient who in their presence threatened the life of another person, and subsequently carried out the threat. The court, citing Restatement Second of Torts, sections 315-320, held that there was a special relationship between defendant therapists and the intended victim which

[5]We summarize a few of the pertinent allegations in the second amended complaint: It was alleged that defendants were supervising Klein in a plan of restitution of money obtained by him unlawfully, and that it was pursuant to the terms of Klein's probation and restitution plan that he obtained employment. That Klein told defendants that he had taken a position with JAMCO in sales and defendants knew or had reason to know that a position in sales was likely to provide access to cash receivables and expense accounts. Accordingly, defendants knew that there was a reasonable probability that Klein would convert funds of JAMCO if put in a position of access to such funds. It is also alleged that defendants knew that the financial burden of making restitution under terms of probation drastically increased the danger of further criminal conduct by Klein.

imposed a duty upon them to warn said person of the foreseeable danger. *(Id.,* at pp. 435-436.)

We disagree with appellant's argument and, for the reasons hereafter stated, conclude no special relationship existed that created a duty to warn.

The unique position or status of a probationer distinguishes this case from *Johnson* and *Tarasoff.* ■ The judge, after serious consideration, determined that Klein was a proper subject for rehabilitation and placed him on probation. This decision was, of course, immune from liability. (*City of Santa Clara* v. *County of Santa Clara,* 1 Cal.App.3d 493, 498 [81 Cal.Rptr. 643].) ■ Although defendants are part of the rehabilitative machinery, their activities are confined to the terms of probation as determined by the judge. Here, they did not place Klein with JAM-CO—a clear distinction from *Johnson*—nor could they direct him in his employment activities. ■ Pragmatically, a large degree of privacy is required in the rehabilitative program. The Legislature has made this quite clear. Penal Code section 1203.05 declares the state's policy against disclosure of criminal records.[6] Penal Code section 13100 et seq. not only limit access to criminal records but make it a misdemeanor to disclose such information. Unquestionably, disclosure of a probationer's record would prejudice him with prospective or current employers, and effectively nullify the judge's order.[7] The complaint in our present case tells us that the court's confidence in Klein was misplaced, but that is not

[6]Penal Code, section 1203.05 provides:

"(a) Except as provided in subdivision (b) or (c), after 30 days from the date judgment is pronounced or probation is granted, any report of the probation officer filed with the court may be inspected by court personnel and shall be made available only to persons authorized or required by law to inspect or receive copies of the report and shall not be open to public inspection.

"(b) Any other person may inspect or receive copies of the report at any time by order of the court upon filing a petition therefor. In addition, the court, on its own motion, may at any time make the report public or disclose its contents.

"(c) Any person is entitled to inspect or receive copies of a probation report that is not otherwise open to inspection or copying under subdivision (a) if another accusatory pleading, arising out of a subsequent arrest, is filed with respect to the person who is the subject of the report. In such a case, the report shall be open to inspection or copying until such time as there is a final disposition of the case. Thereafter, the report shall be subject to the applicable provisions of subdivision (a) or (b)."

[7]We are not saying that a probationer's dangerous propensities should never be disclosed. Had defendants first contacted JAMCO and sought its aid in rehabilitating Klein, the *Johnson* case might require a different result. Other factual situations may also require a duty to warn. Our decision is based solely on the facts of this case.

defendants' fault as they could not have done anything about it, even if they had disagreed. They were bound to make the rehabilitative effort work and it would have been self-defeating had they, in their attorney's phrase, hung a "leper's bell" on Klein by warning his employer that he merited special watching.

■ There is another element in this case that is lacking in most other special relationship situations. The doctrine in many cases is based on the duty to aid or protect when there is a relationship of dependency. "The critical element in those cases that have attached liability to a public employee's discretionary acts has been the presence of a special relationship between employee and plaintiff that justified reliance by plaintiff on the employee's statement or promise." (*McCarthy* v. *Frost,* 33 Cal.App.3d 872, 875 [109 Cal.Rptr. 470].) "As the Restatement suggests, the law appears to be heading toward a recognition of the duty to aid or protect in any relation of dependence or of mutual dependence." (*Mann* v. *State of California,* 70 Cal.App.3d 773, 779-780 [139 Cal.Rptr. 82].)

In our present case, there is no relationship or reliance of dependency. As stated earlier, Klein found his own employment with JAMCO. The fact that he was to devote some of his earnings to restitution wherever employed does not single out JAMCO as a chosen and active participant in Klein's probationary activities. JAMCO, in its ordinary course of business, hired Klein, and after only two months of scrutiny, elevated him to executive vice president. ■ Prudent employers protect themselves through complete background investigations, security bonds, and internal bookkeeping procedures designed to prevent embezzlement. As a matter of fact, JAMCO was in the best position to avoid the hazards complained of. In our view plaintiffs have not established a special relationship with defendants and Klein that set them apart from the general public and therefore they must also share the risks inherent in the rehabilitative effort. (See *Johnson, supra,* 69 Cal.2d 782, 799.)

The judgment of dismissal is affirmed.

Kaus, P. J., and Stephens, J., concurred.