[S.F. No. 24343. June 13, 1983.]

DELLA WILLIAMS, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Trezza, Ithurburn & Steidlmayer and Eugene J. Davis for Plaintiff and Appellant.

George Deukmejian, Attorney General, Michael Franchetti, Chief Deputy Attorney General, Willard A. Shank, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Seward L. Andrews, Bruce J. Braverman and Stephen J. Egan, Deputy Attorneys General, for Defendant and Respondent.

---

**OPINION**

**KAUS, J.—**

I

The issue is whether the mere fact that a highway patrolman comes to the aid of an injured or stranded motorist creates an affirmative duty to secure information or preserve evidence for civil litigation between the motorist and third parties. We find that stopping to aid a motorist does not, in itself, create a special relationship which would give rise to such a duty.

According to plaintiff's complaint, she was a passenger in an automobile on a bridge crossing the American River in Sacramento when a piece of a heated brake drum from a passing truck was propelled through the windshield and struck her in the face before coming to rest on the rear seat of the automobile. The complaint also alleges: "At such time and place, defendants, STATE OF CALIFORNIA, DOE ONE, DOE TWO, DOE THREE, DOE FOUR and DOE FIVE, and each of them, arrived within minutes of the accident and assumed the responsibility of investigating the accident, and the accident of two other vehicles which were damaged and stopped at the scene to determine causes thereof, and said defendants so negligently and carelessly investigated the accident as to virtually destroy any opportunity on plaintiff's part to obtain compensation for the

severe injuries and damages she suffered from any other defendants or any other persons who concurred in causing them. Included amongst said acts of negligence was the failure to investigate the brake drum part to determine it was still hot, failure to identify other witnesses at the scene or even the other motorists damaged by brake drums, and failure to attempt any investigation or pursuit of the owner or operator of the truck whose brake drum broke and caused plaintiff's injuries."[1]

The state moved for judgment on the pleadings on grounds the police function in investigation of accidents is immune under specific immunity statutes (Gov. Code, §§ 818.2, 821, 845, 846) and under general governmental immunity for discretionary acts (§§ 820.2, 820.25). The trial court granted the motion, finding the state immune under sections 820.2 and 820.25 and refusing to apply what it called the "special relationship exception" to statutory immunity.[2]

## II

Once again the immunity cart has been placed before the duty horse. (See *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894].) We said in *Davidson* (pp. 201-202): "Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity. This logical sequence of inquiry was overlooked in dicta in at least three Court of Appeal cases: *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332]; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470]. The fallacy was exposed in *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 704 [141 Cal.Rptr. 189], where Justice Reynoso, writing for the Court of Appeal, arrayed the subjects of the inquiry in proper order: 'The parties assume that if we conclude the alleged facts establish as a matter of law the existence of a "special relationship" (a relationship giving rise to the county's duty to act prudently, and appellants' justifiable reliance thereon) we will obviate the need

---

[1]Although plaintiff does not identify the fictional defendants in the complaint, a memorandum filed in opposition to the motion for judgment on the pleadings stated that "Plaintiff was seriously injured and lost her opportunity to obtain a remedy when a California Highway Patrol officer negligently failed to discover the identity of the person who injured her."

[2]The trial court stated: "Plaintiff's action against the State of California is predicated upon an exception to statutory immunity granted the state from liability arising from the negligent performance of discretionary acts. The Third District Court of Appeal has expressly repudiated such an exception based upon a 'special relationship' theory as pleaded here by plaintiff. Allowing this exception would contravene established immunity principles postulated under the California Tort Claims Act."

to consider whether respondents are immune from liability under sovereign immunity principles. Implicit in this exception theory is the assumption the "special relationship" creates an affirmative governmental responsibility which when breached gives rise to governmental liability notwithstanding the discretionary (immunized) character of the tortious act.' The *Whitcombe* court disagreed, correctly explaining that the question of '"duty" [to which the special relationship concept pertains] is only a threshold issue, beyond which remain the immunity barriers . . . .' (73 Cal.App.3d at p. 706.)"

In *Davidson* we referred to Professor Van Alstyne's summary of the problem in California Government Tort Liability Practice (Cont.Ed.Bar 1980) section 2.65: "Some of the cases represent an unnecessary effort to categorize the acts or omissions in question as immune discretionary functions, when the same result could be reached on the ground that the facts fail to show the existence of any duty owed to plaintiff or any negligence on the part of the police officers. See, *e.g., McCarthy* v *Frost, supra*; *Bratt* v *San Francisco* [(1975) 50 Cal.App.3d 550 (123 Cal.Rptr. 774)]. Absence of duty is a particularly useful and conceptually more satisfactory rationale where, absent any 'special relationship' between the officers and the plaintiff, the alleged tort consists merely in police nonfeasance. See, *e.g., Mikialian* v *Los Angeles* (1978) 79 CA3d 150, 144 CR 794 (no duty of police to place flares for protection of tow truck operator); *J. A. Meyers & Co.* v *Los Angeles County Probation Dep't* (1978) 78 CA3d 309, 144 CR 186 (no duty of probation officers to disclose criminal record of probationer to prospective employer)."

## III

■ Accordingly, we turn first to the question of duty under general principles of tort law. As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act. (Rest.2d Torts, § 314; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 554, p. 2821.) (3) Also pertinent to our discussion is the role of the volunteer who, having no initial duty to do so, undertakes to come to the aid of another—the "good Samaritan." He is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. (Rest.2d Torts, § 323.)

Application of these general principles in the area of law enforcement and other police activities has produced some confusion and conflict. To an extent,

the concepts are muddied by widely held misconceptions concerning the duty owed by police to individual members of the general public.[3]

 In spite of the fact that our tax dollars support police functions, it is settled that the rules concerning the duty—or lack thereof—to come to the aid of another are applicable to law enforcement personnel in carrying out routine traffic investigations. Thus, the state highway patrol has the right, but not the duty, to investigate accidents (Veh. Code, § 2412;[4] *Winkelman* v. *City of Sunnyvale* (1976) 59 Cal.App.3d 509, 511 [130 Cal.Rptr. 690]; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872, 876 [109 Cal.Rptr. 470]) or to come to the aid of stranded motorists (*Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 778 [139 Cal.Rptr. 82]). Nevertheless, although "no special relationship may exist between members of the California Highway Patrol and the motoring public generally, or between the Patrol and stranded motorists generally" (*Mann, supra,* 70 Cal.App.3d at p. 780), when the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization. (*Hartzler, supra,* 46 Cal.App.3d at p. 10; *Mann, supra,* 70 Cal.App.3d at p. 780.)

The breach of duty may be an affirmative act which places the person in peril or increases the risk of harm as in *McCorkle* v. *Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453], where an officer investigating an accident directed the plaintiff to follow him into the middle of the intersection where the plaintiff was hit by another car. The negligence may also constitute an omission or failure to act, as in *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508], where a deputy sheriff promised to warn a decedent if a prisoner, who had made threats on her life, was released. The county was held liable when the sheriff failed to warn.

---

[3]See excellent discussion in *Warren* v. *District of Columbia* (D.C.App. 1981) 444 A.2d 1, 4-9. The court stated: ". . . the allegations of negligence in the present case derive solely from defendants' status as police employees and from plaintiffs' contention that defendants failed to do what reasonably prudent police employees would have done in similar circumstances. The difference is between ordinary negligence on the one hand and a novel sort of professional malpractice on the other. A person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, *but neither does he assume any greater obligation to others individually. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.*" (Italics added; *id.,* p. 8.)

[4]Section 2412 provides: "All members of the California Highway Patrol *may* investigate accidents resulting in personal injuries or death and gather evidence for the purpose of prosecuting the person or persons guilty of any violation of the law contributing to the happening of such accident." (Italics added.) As *McCarthy* v. *Frost, supra,* 33 Cal.3d 872, points out, section 2412 imposes no duty to investigate—it is only permissive. We add the observation that the intended beneficiaries of any investigation that is undertaken are the People as prosecutors in criminal cases, not private plaintiffs in personal injury actions.

Recovery has been denied, however, for injuries caused by the failure of police personnel to respond to requests for assistance, the failure to investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise, express or implied, that they would provide protection. (*Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5] [police failed to respond to a plea made 45 minutes before the homicide]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332] [police radio dispatcher delayed 10 minutes after alert before broadcasting burglary in progress]; *McCarthy* v. *Frost, supra,* 33 Cal.App.3d 872 [complaint alleged decedent was driving on a state highway at a particular time and place, highway patrol negligently failed to find him, and death was caused by failure to receive timely medical aid; held state and patrolman not liable].)

This does not mean that a promise and reliance thereon are indispensable elements of a special relationship. Such a relationship has also been found when the *conduct* of a police officer, in a situation of dependency, results in detrimental reliance on him for protection. A special relationship based on such dependency was found in *Mann* v. *State of California, supra,* 70 Cal.App.3d 773. Highway patrolmen, coming to the aid of a stranded motorist, placed their car with flashing lights behind two cars stalled on the freeway. After calling the tow truck, the officers withdrew without warning; they did not wait for the tow truck to line up behind the stalled car or provide the alternative protection of flares. Minutes later the stalled car was sideswiped by a passing car and the persons nearby were injured. In *Mann,* the officers' conduct contributed to, increased, and changed the risk which would have otherwise existed. They stopped to investigate and they took affirmative steps to provide assistance, lulling the injured parties into a false sense of security and perhaps preventing other assistance from being sought.

Although the Legislature viewed *Mann* as dangerously extending the liability of peace officers while engaged in activities not involving law enforcement—i.e., while rendering assistance to stranded motorists not involved in accidents[5]—the case is no more than the application of the duty of care attaching

---

[5]The Legislature purported to overrule *Mann* by enacting section 820.25 (Gov. Code) as an urgency measure in 1979. The section, described by some as conceptually flawed (see Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar Supp. May 1982) § 2.65), deals with immunities and therefore, need not be set forth here. Nevertheless, the intent expressed in the urgency clause reveals legislative concern with the ramifications of expanded liability in the area of law enforcement and police activities: "A recent ruling by the appellate court has held that liability may attach to a state traffic officer who stops to assist a stranded motorist. [¶] In such a situation, the officer would not be immunized from tort liability by Section 820.2 of the Government Code, which gives a public employee immunity from liability when an act or omission which causes injury results from an exercise of discretion, since the court found that while the initial decision to stop may be discretionary, the decision to leave is not. To avoid liability, a traffic officer, or a state or local law enforcement official, would have to either not render assistance to motorists who are not involved in an accident or, having stopped to give assistance,

to any volunteered assistance. (Rest.2d Torts, §§ 323, 324.) Indeed, in *David-son* v. *City of Westminster, supra* (32 Cal.3d at p. 208), we held that "*Mann,* properly read, is a simple application of the 'good Samaritan' doctrine." To extend the *Mann* situation—where the officer had undertaken to protect the plaintiff from future physical harm—to the one presented here—failure to investigate the cause and source of harm already incurred—is, however, quite unwarranted. Students of the Bible will recall that while the Samaritan dressed the victim's wounds and provided him with food and shelter, he took no steps to ascertain the identity of the thieves who had wounded and stripped the victim and left him half dead.

Nevertheless, *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], which followed and purported to be controlled by *Mann,* does impose such an expanded duty on peace officers. The complaint in *Clemente* alleged that a highway patrolman stopped to investigate an accident in which a motorcyclist allegedly struck a pedestrian in the crosswalk. The officer cleared the site of the accident of traffic and questioned the witnesses. The cyclist admitted that his machine had struck the pedestrian but denied responsibility. The officer radioed for an ambulance, notified the city police, but did not obtain the identity of the motorcyclist, who had departed when the city police arrived.

It is important to note that it was not alleged that the officer's investigation caused plaintiff not to undertake one of his own. Nevertheless, the Court of Appeal found potential liability against the state based on the officer's alleged negligence in failing to get the cyclist's name. It read its own decision in *Mann* as establishing a special relationship and thus a duty to act based solely on the fact of "dependence."[6] Finding the pedestrian *dependent* on the highway patrolman, the *Clemente* court imposed liability where the patrolman's acts consisted of stopping to investigate and failing to secure the cyclist's name.

Yet on similar facts, the Court of Appeal in *Winkelman* v. *City of Sunnyvale, supra,* 59 Cal.App.3d 509, had found no special relationship giving rise to a duty to assemble evidence for future civil litigation: Plaintiff was driving on a freeway when struck from behind by a pickup truck, which pushed her car across the freeway into oncoming traffic and a collision with another car. Both drivers were badly injured and were unconscious when the city police arrived to

---

remain at the scene even though more serious emergency situations may arise elsewhere in the meantime. [¶] Therefore, in order that traffic officers, and state or local law enforcement officials, may have flexibility in assisting stranded motorists and in order that the state will no longer be required to pay damages on this theory of expanded liability, it is necessary that this act take effect immediately."

[6]One might well question whether the drowning man is not similarly dependent on the swimmer on shore; it is settled that there is no *legal* duty to come to the rescue. (Prosser, Law of Torts (4th ed. 1971) pp. 340-341; Rest., Torts, § 314, com. (e).)

investigate. Meanwhile, the driver of the pickup stopped at the city police station and reported that he might have been a participant in a freeway accident, but was allowed to leave because the police had not yet learned that a pickup truck had been involved. Plaintiff based her suit on the city's alleged negligence in permitting the driver of the truck to leave without securing identification, claiming that she suffered damages in the frustration of a valid cause of action for her injuries.

Responding to plaintiff's argument in *Winkelman* that a duty to exercise due care arose when the officers voluntarily undertook to investigate the accident, the Court of Appeal reasoned that the detriment suffered by plaintiff by reason of the involvement of the truck occurred before the officers arrived and the claimed negligence on their part was the failure to protect her from the effects of events that had already happened. Since the officers had not created the peril they were under no duty to take affirmative action unless a relationship existed between them giving rise to the duty. The Court of Appeal found no such special relationship. Obviously *Winkelman* and *Clemente* are irreconcilable.

## IV

■ Turning to the case before us, the sum and substance of plaintiff's complaint is that unnamed agents of the state "arrived within minutes of the accident and assumed the responsibility of investigating the accident."[7] The alleged negligence is nonfeasance—failure to test for the heat of the object which struck her, failure to secure identification of witnesses, and failure to attempt investigation or pursuit of the owner or occupant of the truck whose brake drum had caused her injuries. There are no allegations that the officers assured her, either expressly or impliedly, that they would do any of the acts she faults them for not doing, no allegations that they conducted themselves in such a manner as to warrant reliance upon them to do the acts which plaintiff alleges they should have done nor, finally, is there any hint that they prevented plaintiff from conducting an investigation of her own.[8]

Applying the general principles of law represented in the decisions reviewed above, from *McCorkle* to *Mann*, we conclude that plaintiff has not stated a cause of action in that she fails to establish a duty of care owed by defendant state. The officers did not create the peril in which plaintiff found herself; they took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed; there is no indication that they voluntarily

---

[7]The nature of the state's undertaking was pleaded only as a legal conclusion; it was never presented as a factual allegation.

[8]Incidentally, there is no allegation that the investigation which the officers did not conduct would have identified the person or entity responsible for plaintiff's injuries or established legal liability by that person or entity.

assumed any responsibility to protect plaintiff's prospects for recovery by civil litigation; and there are no allegations of the requisite factors to a finding of special relationship, namely detrimental reliance by the plaintiff on the officers' conduct, statements made by them which induced a false sense of security and thereby worsened her position.[9]

## V

A remaining issue is whether plaintiff should be given leave to amend. (Cf. *MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809, 815 [161 P.2d 449].) In her first and only pleading the facts of her encounter with the officer are alleged in the most general, partly conclusory terms. Presumably they can be fleshed out and—knowing nothing more about the case—it would be presumptuous for us to assume that plaintiff can never state a cause of action. While she has not asked for leave to amend, we are satisfied that this is the result of everybody's misperception that the legal question presented was immunity, not whether plaintiff had stated or could state a cause of action.[10] Since we have reached behind the immunity issue and dealt with the threshold question of whether the complaint stated a cause of action, fairness demands that plaintiff be given an opportunity to give that issue her best shot.

The judgment is reversed, with directions to permit plaintiff to file an amended complaint, should she ask for leave to do so.

Richardson, J., Broussard, J., Reynoso, J., and Golde, J.,* concurred.

**MOSK, J.,** Concurring and Dissenting.—I concur in the judgment, but I am unable to agree fully with either of the opinions of my colleagues.

On the one hand the majority hold the highway patrol officer had no duty to assist a citizen who was injured and whose motor vehicle was damaged on a highway. The Chief Justice, on the other hand, adopts what is rather extravagantly referred to as "the expanding nature of the special relationship doctrine"; here this doctrine is deemed to require a public law enforcement officer "to marshal information for the purposes of [private] civil litigation."

The case need not be decided on the basis of either extreme: there is ample authority for a moderate position which recognizes the duty that does exist but

---

[9]To the extent that *Clemente* v. *State of California, supra,* 101 Cal.App.3d 374, is inconsistent with our views, it is disapproved.

[10]As noted, the trial court gave judgment on the pleadings on an immunity theory. All briefs in the Court of Appeal and in this court were filed before our decision in *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, reversed the priorities. )

*Assigned by the Chairperson of the Judicial Council.

gives effect to the legislative intent that a public employee and his employer have immunity from civil liability for discretionary acts. (Gov. Code, § 820.2; see also *id.*, §§ 815.2, subd. (b), 818.2, 821) Indeed, in a somewhat different context we adopted that principle in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d. 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; curiously the dissent embraces that case but overlooks the immunity granted the peace officers therein (*id.* at p. 449).

Unlike the majority, I find it difficult to equate a highway patrol officer who has prescribed duties on public highways with a Good Samaritan who volunteers to assist a stranger. *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453], *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], and *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], are instructive on the duty owed to a vehicle operator by a peace officer, although their interpretation of statutory immunity is debatable.

State highway patrol officers have all the powers of peace officers as to offenses committed on any highway. (Pen. Code, § 830.2, subd. (a); Veh. Code, § 2409.) They "shall enforce all laws regulating the operation of vehicles and the use of the highways" and "shall have full responsibility and primary jurisdiction for the administration and enforcement of such provisions and laws, and for the investigation of traffic accidents, on all state highways" (*id.*, § 2400). They are to patrol the highways "at all times" (*id.*, § 2401). Highway patrol vehicles may be equipped with stretcher and first aid equipment for use in transporting injured persons (*id.*, § 2406). The highway patrol gathers, tabulates and analyzes accident reports, and may conduct research into the cause and control of accidents (*id.*, §§ 2407, 2408). Patrolmen may direct traffic as conditions warrant (*id.*, § 2410). All members of the highway patrol may investigate accidents resulting in personal injuries and gather evidence for the purpose of prosecuting persons guilty of any violations of the law contributing to the accident (*id.*, § 2412). It is unlawful to fail or refuse to comply with any lawful order, signal or direction of any traffic officer (*id.*, § 2800); "traffic officer" includes highway patrolmen (*id.*, § 625). The highway patrol shall provide proper and adequate policing of all vehicular crossings to insure enforcement of laws (*id.*, § 23251). A public employee is not liable for civil damages for injuries caused by his vehicle while in pursuit of a suspected violator of the law (*id.*, § 17004). Highway patrol officers who provide emergency medical services at the scene of an emergency shall be liable in civil damages only for gross negligence or acts not in good faith (Health & Saf. Code, § 1769.5).

The foregoing, read together and with reasonable inferences therefrom, indicate that the highway patrol officer in the case at bar, concerned as he was with highway safety, vehicle code provisions, and aid to injured persons on

public highways, had a duty to this plaintiff who was injured in a motor vehicle on a public highway.

Having determined that the highway patrol officer had a duty to this plaintiff, I reach the problem of the manner in which that duty was to be exercised. Confronted with a seriously injured passenger, a damaged motor vehicle, two other damaged vehicles, potential witnesses at the site, and a fugitive truck that caused the injury and damages, the patrolman was faced with a dilemma. Should he attend to the injuries, should he remove the vehicles from the highway on which they might become a hazard to other motorists, should he seek and identify witnesses before they leave the scene, or should he pursue the truck that initially created the problem? Therein lies the imperative to exercise discretion. No matter which of the several alternatives he selected, someone could persuasively argue that another deserved priority. This scenario lends itself to typical Monday-morning quarterbacking.

It is for just such a circumstance that the Legislature provided immunity when discretion of a public employee is involved. (Gov. Code, § 820.2.) If discretion was exercised in a reasonable and nonnegligent manner, the conduct cannot result in liability even though another person, acting equally reasonably, might have handled the situation differently.

In my opinion, the officer cannot be faulted for failing to give the potential civil suit of this plaintiff his priority attention. The alleged negligence here merely refers to the officer choosing one course of action over another; thus the statutory immunity for exercising discretion applies.

**BIRD, C. J.,** Dissenting.—In holding that plaintiff's complaint does not state a cause of action in negligence, today's majority opinion fails to recognize the expanding nature of the special relationship doctrine. As a result, the majority opinion represents a significant step backwards in the evolution of negligence law toward the concept of responsibility and accountability for negligent omissions.

### I.

The threshold question presented by this case is whether the highway patrol officers who investigated the automobile accident owed a duty of care to plaintiff. In *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], this court stated that "legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." A duty of care is found to exist when considerations of policy lead to the conclusion that the plaintiff is entitled to recovery for his injury. (*Ibid.*)

As a general rule, a person does not have an affirmative duty to assist or protect another who is in danger. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 554, p. 2821.) However, the existence of a special relationship between the parties will give rise to such a duty. (*Ibid.*; Prosser, Torts (4th ed. 1971) § 56, p. 339.)

The evolving trend of negligence law is to increase the number of situations in which an affirmative duty will be imposed "by expanding the list of special relationships which will justify departure from" the general rule of nonliability. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 435, fn. 5; Prosser, *supra,* § 56 at p. 339.) As the Restatement Second of Torts (§ 314A, com. b) explains, "[t]he law appears . . . to be working slowly toward a recognition of the duty to aid or protect in *any relation of dependence* or of mutual dependence." (Italics added; see also Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) General Liability and Immunity Principles, § 2.64, p. 143.)

This expansion of the special relationship concept to encompass situations in which one party becomes dependent upon another has been recognized in several opinions of the Court of Appeal. (See, e.g., *Pamela L.* v. *Farmer* (1980) 112 Cal.App.3d 206, 211 [169 Cal.Rptr. 282] [special relationship was predicated upon children's dependence on an adult]; *Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 821, 823 [164 Cal.Rptr. 264]; *J. A. Meyers & Co.* v. *Los Angeles County Probation Dept.* (1978) 78 Cal.App.3d 309, 315 [144 Cal.Rptr. 186].) Two decisions have explicitly held that a special relationship based on dependence arises when a highway patrol officer stops to render assistance to a disabled motorist. (*Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799]; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82].)

In *Mann,* a highway patrol officer stopped to assist two cars that had broken down in the speed-change lane of a freeway. The officer parked his vehicle behind the two cars and turned on his rear flashing lights. After a tow truck arrived, the officer left to resume his patrol without informing anyone at the scene. His departure left the rear of the disabled cars unprotected by the flashing lights of the patrol car. In addition, the officer failed to place any protective flares on the highway. A few minutes later, a motorist driving on the freeway sideswiped one of the cars and hit several persons standing nearby.

In his civil suit, plaintiff alleged that the highway patrol officer had failed to exercise reasonable care to protect him from the accident. Defendant's motion for a directed verdict was subsequently granted by the trial court. This judgment was reversed on appeal.

The court held that the jury could have found from the evidence that a special relationship existed between plaintiff and the investigating officer. (*Id.*, at p. 779.) "Clearly plaintiff was dependent upon [the highway patrol officer] here. [The officer] was the expert in traffic safety and charged with specific responsibility for it on the stretch of freeway in question." (*Id.*, at p. 780.) Thus, the court concluded, "once a state traffic officer has chosen to investigate the plight of specific persons on a freeway and informed himself of the foreseeable danger to them from passing traffic, a special relationship requiring him to protect them by readily available means arises . . . ." (*Ibid.*)[1]

The reasoning of the *Mann* court was followed in *Clemente v. State of California, supra,* 101 Cal.App.3d 374. In that case, plaintiff's complaint against the state alleged that he was struck by a motorcycle while walking in a pedestrian crosswalk. Plaintiff suffered severe physical injuries. Immediately after the accident, a highway patrol officer arrived at the scene. The officer cleared the intersection of traffic and interviewed the witnesses who were present. The motorcyclist admitted to the officer that he had struck plaintiff, but explained that his vision had been blocked by the presence of a van. After radioing his dispatcher for an ambulance, the officer left the accident scene without obtaining the identity of the motorcyclist. The motorcyclist also departed and his identity was never discovered by plaintiff.

Plaintiff claimed that the officer was negligent in failing to learn the motorcyclist's name. This negligence allegedly prevented plaintiff from recovering damages for the injuries caused by the accident. Defendants' demurrer to plaintiff's complaint was sustained by the trial court.

The Court of Appeal reversed the judgment, relying on the holding in *Mann*. (*Id.*, at pp. 379-380.) The court explained that in *Mann* "we . . . said that a special relationship in tort law obtained between the California highway patrol officer there involved and the stranded motorists by reason of their dependence on his expertise. [Citation.] Here, the completely disabled and apparently incompetent plaintiff was likewise completely dependent on [the officer] following the traffic accident." (*Ibid.*) As a result of this relationship of dependence, the officer had an affirmative duty to learn the identity of the motorcyclist that had collided with plaintiff.

---

[1]The majority opinion views the *Mann* case as "'simply an application of the "good Samaritan" doctrine.'" (Maj. opn. at p. 26, quoting from *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 208 [185 Cal.Rptr. 252, 649 P.2d 894].) However, even though application of that doctrine to the facts of the case may have led to the same result, *Mann*'s holding is explicitly predicated on the special relationship of dependence between the highway patrol officer and plaintiff. (*Mann v. State of California, supra,* 70 Cal.App.3d at pp. 779-780.) The opinion neither discusses, nor applies, the "good Samaritan" rule.

The majority opinion fails to perceive that the *Mann* and *Clemente* decisions are in accord with the expanding nature of the special relationship doctrine in modern tort law. The reasoning of these decisions should be followed in the present case. Here, as in those cases, plaintiff's complaint established that she was completely dependent upon the investigating highway patrol officers to protect her from foreseeable harm following the accident. This relationship of dependence arose from several factors.

First, it can be reasonably inferred from the facts alleged in the complaint that plaintiff was physically unable to pursue the tortfeasor or otherwise investigate the accident on her own. The brake drum that was propelled through the front windshield lacerated plaintiff's face, fractured several facial bones, and caused the loss of an eye. After sustaining such injuries, it is unlikely that plaintiff had the capacity to pursue the identity of the truck driver.

Moreover, the complaint alleges that after the highway patrol officers arrived at the scene, they "assumed the responsibility of investigating the accident." Under Vehicle Code section 2400, the commissioner of the highway patrol has "full responsibility and primary jurisdiction . . . for the investigation of traffic accidents" on all state freeways. All persons involved in an accident must cooperate with the highway patrol's investigation. For example, if an injury occurs, a driver must "give his name, address, the registration number of the vehicle he is driving, the name of the owner . . . and exhibit his driver's license to any traffic . . . officer at the scene of the accident . . . ." (Veh. Code, § 20003.) Thus, even if plaintiff had not been disabled by the accident, once the officers arrived, she and the car driver were not free to immediately leave the scene to pursue the tortfeasor.

Finally, after the officers undertook the investigation, it was reasonably foreseeable that plaintiff would rely on their expertise rather than seek the assistance of other persons at the scene. At the same time, other persons were unlikely to come forward to interview witnesses or gather evidence because they would assume that the officers would perform these tasks.

Under these circumstances, plaintiff's dependence upon the highway patrol officers gave rise to an affirmative duty to act. The officers were obligated to exercise reasonable care in investigating the accident. Their failure to talk to witnesses at the scene or otherwise take steps to learn the identity of the truck driver constituted a breach of that duty. As a result of this negligence, plaintiff was denied any possibility of recovering damages from the tortfeasor for the physical injuries she sustained.

## II.

Since plaintiff's complaint states a cause of action in negligence, the trial court's order dismissing the suit should not be affirmed unless the state is immune from liability. The state contends that several sections of the Government Code shield it from liability for the allegedly negligent omissions of the patrol officers.

In reviewing this contention, it must be kept in mind that "[t]he 1963 Tort Claims Act did not alter the basic teaching of *Muskopf* v. *Corning Hospital Dist.* [1961] 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457]: 'when there is negligence, the rule is liability, immunity is the exception.'" (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352].) Thus, "[u]nless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail." (*Ramos* v. *Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93].)

The state places primary reliance on section 820.2 of the Government Code. That provision states in pertinent part that "a public employee is not liable for any injury resulting from an act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."[2]

This court authoritatively construed section 820.2 in *Johnson* v. *State of California, supra,* 69 Cal.2d 782. In that case, a literal interpretation of the term "discretion" was rejected. (*Id.,* at p. 790.) Instead, the court distinguished between a public entity's "basic policy decision" and the "subsequent ministerial actions in the implementation of that basic decision." (*Id.,* at p. 797.) Actions of the latter type were held to be nondiscretionary within the meaning of section 820.2 and, consequently, unprotected by the provision's grant of immunity. (*Id.,* at pp. 793-798; see also *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 519 [125 Cal.Rptr. 365, 542 P.2d 237].)

In the present case, the alleged negligence did not involve "basic policy decisions" of the California Highway Patrol. Once the officers decided to investigate the traffic accident, their performance of that investigation was purely ministerial. (*McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 261-267 [74 Cal.Rptr. 389, 449 P.2d 453]; *Mann* v. *State of California, supra,* 70 Cal.App.3d at p. 778.) Thus, the failure to exercise reasonable care in investigating the accident does not come within the protection of the discretionary immunity statute.

---

[2]With certain exceptions not applicable in this case, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (Gov. Code, § 815.2.)

The other, more specific statutory grants of immunity relied upon by the state are also inapplicable. Plaintiff's complaint is not based on the officers' failure to arrest the tortfeasor. (Gov. Code, § 846.) Rather, the state is charged with not adequately investigating the identity of the truck driver and failing to marshal information for purposes of civil litigation.

Nor does the complaint allege that the state failed to enforce a law or enactment within the meaning of Government Code sections 818.2 and 821. "[T]o enforce a law normally means to compel obedience to the law by actual force, such as involuntary detention, arrest or punishment." (*Clemente* ·v. *State of California, supra,* 101 Cal.App.3d at p. 378.) The phrase may also mean to give effect to a law or to cause a law to have force. (*Meridian, Ltd.* v. *Sippy* (1942) 54 Cal.App.2d 214, 220 [128 P.2d 884].) None of these concepts accurately describe the allegations contained in plaintiff's complaint.

Finally, the state is not protected by statutory immunity for injuries caused by the failure to provide police protection. (Gov. Code, § 845.) This statute merely immunizes a public entity's or employee's "political decision" concerning the extent to which police protection should be provided. (See Cal. Law Revision Com. com. to Gov. Code, § 845, 32 West's Ann. Gov. Code (1980 ed.) p. 410; *Mann* v. *State of California, supra,* 70 Cal.App.3d at p. 778.)

Since the state's alleged negligence does not fall within the scope of the immunity statutes, the trial court's order granting defendant's motion for judgment on the pleadings was improper. In not permitting plaintiff to go forward on her complaint, the majority opinion violates the fundamental principle of our judicial system that the victims of negligence should be compensated for their injuries.

For all of the reasons articulated, I respectfully dissent.