56 Cal.Rptr.3d 272 (2007)
148 Cal.App.4th 1013
Alexandra VAN HORN, Plaintiff and Respondent,
v.
Anthony Glen WATSON, Defendant and Appellant;
Lisa Torti, Defendant and Respondent.
Alexandra Van Horn, Plaintiff and Appellant,
v.
Anthony Glen Watson et al., Defendants and Respondents.
Nos. B188076, B189254.
Court of Appeal of California, Second District, Division Three.
March 21, 2007.
*273 Crandall, Wade & Lowe, Edwin B. Brown, Irvine; McNeil, Tropp & Braun, Jeffrey I. Braun, Costa Mesa, and Frank Cracchiolo, for Defendant and Appellant Glen Anthony Watson.
Law Offices of Hutchinson & Snider and Robert B. Hutchinson, Beverly Hills, for Plaintiff and Appellant.
Hanger, Levine & Steinberg, Jody Steinberg, Woodland Hills, and Lisa Mead, for Defendant and Respondent.
CROSKEY, J.
In these consolidated appeals, the plaintiff Alexandra Van Horn claims that she was severely injured when, after a single vehicle accident, she was negligently removed from the vehicle by the defendant Lisa Torti and, as a result, suffered permanent paraplegia. Plaintiff appeals from a summary judgment granted in favor of Torti on the ground that Torti was entitled to immunity from liability under Health and Safety Code, section 1799.102 (section 1799.102).[1] The defendant Glen Watson was the driver of the vehicle in which plaintiff was a passenger at the time of the accident. Both he and Torti were sued by plaintiff and each filed cross-complaints against each other.[2] At the time of the accident, Torti was riding as a passenger in a second vehicle driven by the defendant Dion Ofoegbu. They were right behind Watson's vehicle when the accident occurred. Plaintiff, Torti, Watson and Ofoegbu were all friends and had been socializing together in a bar prior to the accident.
As we explain, section 1799.102 has an application only to the rendering of care at the scene of a medical emergency. As the *274 record demonstrates the absence of a medical emergency, Torti was not entitled to summary judgment on this basis.. As disputes of fact exist as to (1) whether Torti was negligent; and (2) whether that negligence increased the risk of harm to plaintiff, summary judgment was inappropriate. We will therefore reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND[3]
The accident in which plaintiff was injured took place in the early morning of November 1, 2004. During the evening of October 31, 2004, plaintiff, Torti and Jonelle Freed were relaxing at Torti's home where some marijuana was apparently shared and smoked by both plaintiff and Torti. After Watson and Ofoegbu arrived, they all went to a bar at about 10:00 p.m., where they consumed several drinks. They remained there until about 1:30 a.m. on November 1. When they left the bar, plaintiff and Freed rode as passengers in the vehicle driven by Watson and Torti rode with Ofoegbu in his vehicle.
The accident happened when Watson lost control of his vehicle[4] and crashed into a curb and light standard at about 45 miles per hour. The police concluded that it was the speed at which Watson was traveling that had caused the accident. The force of the impact caused the front air bags to deploy. Plaintiff was in the front passenger seat. When the Watson vehicle crashed, Ofoegbu pulled his vehicle off to the side of the road and he and Torti exited their vehicle to assist the other three people. Torti removed plaintiff from Watson's vehicle. Watson was able to leave the vehicle by himself. Ofoegbu assisted Freed by opening a door for her.
Plaintiff sued Watson, Ofoegbu and Torti. The cause of action against Torti alleged that even though plaintiff was not in need of assistance from Torti after the accident, and had only sustained injury to her vertebrae, Torti dragged plaintiff out of the vehicle, causing permanent damage to her spinal cord and rendering her a paraplegic. After some discovery, Torti moved for summary judgment.
It is clear, from the papers filed by the parties in support and opposition to Torti's motion, that there are conflicting recollections about the critical events that followed the accident. Torti apparently removed plaintiff from the vehicle because she feared the car would catch fire or "blow up." Although Torti testified at deposition that she saw smoke coming from the top of Watson's vehicle and also saw liquid coming from the vehicle, these facts were subject to dispute. There is also a dispute as to how Torti removed plaintiff from the car. Torti testified that she placed one arm under plaintiffs legs and the other behind plaintiffs back to lift her out of the car; plaintiff testified that Torti used one hand to grab her by the arm and pull her out of the car "like a rag doll."
Emergency personnel were called to the scene and plaintiff and Freed were treated and taken to the hospital. Plaintiff suffered various injuries, including injury to her vertebrae and a lacerated liver that required emergency surgery. There is a dispute whether the accident itself caused plaintiffs paraplegia.
The trial court, relying exclusively on section 1799.102, concluded that Torti was immune from liability and granted her motion for summary judgment. Both plaintiff *275 and Watson have appealed (see fn. 2, ante).

ISSUE ON APPEAL
These appeals present the question whether the trial court correctly applied section 1799.102 to this case to find that Torti is entitled to summary judgment on the complaint, or whether it is Civil Code section 1714 and the law of negligence set out in cases such as Williams v. State of California (1983) 34 Cal.3d 18, 192 Cal. Rptr. 233, 664 P.2d 137 that apply to Torti's acts at the accident.[5]

DISCUSSION

1. Standard of Review

We review the summary judgment granted to Torti on a de novo basis. (Price v. Wells Fargo Bank (1989) 213 Cal.App.3d 465, 474, 261 Cal.Rptr. 735.) In doing so, we apply the same rules the trial court was required to apply in deciding that motion. When the defendant is the moving party, it has the burden of demonstrating as a matter of law that one or more elements of plaintiffs cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)
If the defendant's presentation in its moving papers will support a finding in its favor on one or more elements of the cause of action, or on a defense thereto, the burden shifts to the plaintiff to present evidence showing that contrary to defendant's presentation, a triable issue of material fact actually exists as to those elements or the defense. (Code Civ. Proc., § 437c, subd. (p)(2).) That is, the plaintiff must present evidence that has the effect of disputing the evidence proffered by the defendant on some material fact. Thus, section 437c, subdivision (c), states that summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

2. The Purpose of Section 1799.102

Statutory interpretation is a question of law subject to independent judgment review. (Giles v. Horn (2002) 100 Cal.App.4th 206, 219-220, 123 Cal. Rptr.2d 735.) Our primary duty when interpreting a statute is to determine and effectuate the Legislature's intent. (Lafayette Morehouse, Inc. v. Chronicle Publishing Co. (1995) 39 Cal.App.4th 1379, 1382, 46 Cal.Rptr.2d 542; People v. Ramirez (1995) 33 Cal.App.4th 559, 563, 39 Cal.Rptr.2d 374.) "When the language of a statute is clear and unambiguous, there is no need for interpretation and we must apply the statute as written." (Lafayette Morehouse, Inc. v. Chronicle Publishing *276 Co., supra, 39 Cal.App.4th at p. 1382, 46 Cal.Rptr.2d 542.) "Words used in a statute ... should be given the meaning they bear in ordinary use.' (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735[, 248 Cal.Rptr. 115, 755 P.2d 299].)" (People v. Ramirez, supra, 33 Cal.App.4th at p. 563, 39 Cal.Rptr.2d 374.) "However, the `"plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose' and provisions relating to the same subject matter must be construed together and `harmonized to the extent possible.'" (In re Kali D. (1995) 37 Cal. App.4th 381, 386, 43 Cal.Rptr.2d 581; disapproved on another point in People v. Allen (1999) 21 Cal.4th 846, 861, fn. 16, 89 Cal.Rptr.2d 279, 984 P.2d 486.) "`"We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.] The legislative purpose will not be sacrificed to a literal construction of any part of the statute." (Giles v. Horn, supra, 100 Cal.App.4th at p. 220,123 Cal.Rptr.2d 735.)
As noted above, section 1799.102 states: "No person who in good faith, and not for compensation, renders emergency care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission. The scene of an emergency shall not include emergency departments and other places where medical care is usually offered." The issue presented by this case is whether section 1799.102 applies to any emergency care rendered at the scene of any emergency, or whether it applies only to emergency medical care rendered at the scene of a medical emergency.
Two related statutes, and the placement of section 1799.102, provide the answer. First, a definitional section[6] specifically defines "emergency" to mean "a condition or situation in which an individual has a need for immediate medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency." (Health & Saf. Code, § 1797.70.) As section .1799.102 provides immunity for the rendition of "emergency care at the scene of an emergency" (italics added), the definitional section mandates the conclusion that section 1799.102 applies only to emergency medical care rendered at the scene of a medical emergency. Second, we note the location of section 1799.102. It is in the Health and Safety Code, in Division 2.5 of that code, entitled "Emergency Medical Services." It was enacted as part of the "Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act." (Health & Saf.Code, § 1797.) This certainly suggests a limited immunity for emergency medical care. A general immunity statute would more likely be found in the Civil Code, and certainly would not be in a division entitled "Emergency Medical Services." Third, Health and Safety Code section 1797.5 provides the legislative intent of the act and the related state policy, as follows: "It is the intent of the Legislature to promote the development, accessibility, and provision of emergency medical services to the people of the State of California. [¶] Further, it is the policy of the State of California that people shall be encouraged and trained to assist others at the scene of a medical emergency. Local governments, agencies, and other organizations shall be *277 encouraged to offer training in cardiopulmonary resuscitation and lifesaving first aid techniques so that people may be adequately trained, prepared, and encouraged to assist others immediately." (Emphasis added.) This statute confirms that the immunity provided in section 1799.102 was intended to reach only those assisting at medical emergencies.
A deeper analysis only reinforces the conclusion. Section 1799.102 is derived from former section 1767, which provided in pertinent part, "In order to encourage local agencies and other organizations to train people in emergency medical service programs and to render emergency medical services to others, no person who in good faith renders emergency medical care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission.... The scene of an emergency shall not include emergency departments and other places where medical care is usually offered." Clearly, Health and Safety Code former section 1767 was explicit in limiting its terms to emergency medical care. Yet the omission of this language from section 1799.102 cannot be read as an intention to broaden the scope of the statutory meaning beyond that of its predecessor statute, given that the same legislative intent of encouraging training and assistance relating to medical emergencies has simply been moved to Health and Safety Code section 1797.5.
In general, the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act is concerned with establishing a statewide medical services program to train citizens and professionals in lifesaving medical services. Section 1799.102 is part of a chapter entitled "Liability Limitation." The first section in that chapter is section 1799.100, which immunizes public and private entities that train citizens in how to render emergency medical services: "No local agency, entity of state or local government, or other public or private organization which sponsors, authorizes, supports, finances, or supervises the training of people, excluding physicians, registered nurses, or licensed vocational nurses, as defined, in emergency medical services in training programs, shall be liable for any civil damages alleged to result from such training programs." Read together, sections 1799.100 and 1799.102 make it clear that immunity is to be extended to (1) the training of ordinary citizens in emergency medical care; and (2) to "any person" (whether trained or not) who provides that emergency medical care.[7]
Finally, we note that there are numerous other "Good Samaritan" statutes in California, several of which would be completely superfluous if Health and Safety Code section 1799.102 was interpreted to immunize any person who, acting in good faith and without compensation, rendered any type of emergency care at the scene of any type of emergency. (See, e.g., Gov. Code, § 50086 (immunizing anyone with first aid training who is asked by government authorities to assist in a search and *278 rescue; emergency services specifically defined to include "first aid and medical services, rescue procedures, and transportation or other related activities"); Harb. & Nav.Code, § 656 (immunizing anyone rendering assistance at a boating accident; immunity extends to "any act or omission in providing or arranging salvage, towage, medical treatment, or other assistance").)
In sum, we conclude the immunity provided by Health and Safety Code section 1799.102 applies only to the rendition of emergency medical care at the scene of a medical emergency.

3. Torti is Not Entitled to Summary Judgment

It is clear that, as a matter of law, Torti did not provide emergency medical care to plaintiff at the scene of a medical emergency. Assuming, without deciding, that Torti believed plaintiff had to be immediately removed from the car due to a risk of fire or explosion, this risk was not a medical risk to plaintiff's health. Any perceived risk to plaintiff from remaining in the car was not a medical risk; moving plaintiff from the car was therefore not emergency medical care.[8]
There is no dispute in this record that Torti merely moved the plaintiff and did not render any emergency medical care. Section 1799.102 therefore cannot be applied to her. Rather, her liability to plaintiff must be evaluated under the standard set out in Williams v. State of California, supra, 34 Cal.3d at p. 23, 192 Cal.Rptr. 233, 664 P.2d 137. (See fn. 5, ante.)[9] As disputes of fact exist as to whether Torti's removal of plaintiff from the car was negligent and whether that negligence increased the risk of harm to plaintiff, summary judgment was not appropriate.

DISPOSITION
The judgments in favor of Torti and against plaintiff and Watson are reversed and the matter is remanded for further proceedings consistent with the views expressed herein. Costs on appeal to plaintiff and Watson.
KLEIN, P.J., and KITCHING, J., concur.
NOTES
[1] Health and Safety Code, section 1799.102 provides: "No person who in good faith, and not for compensation, renders emergency care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission. The scene of an emergency shall not include emergency departments and other places where medical care is usually offered."

Unless otherwise stated, all statutory references are to the Health and Safety Code.
[2] Although Watson filed opposition to Torti's motion for summary judgment, Torti's motion addressed only plaintiff's complaint, not the cross-complaint filed by Watson against Torti, nor the cross-complaint filed by Torti against Watson. After the trial court issued its order granting Torti's motion for summary judgment, Torti and Watson stipulated that the order had a res judicata/collateral estoppel effect on Torti's and Watson's cross-complaints against each other and therefore judgment "is in favor of ... Torti with regard to [their cross-complaints]." Watson states the stipulation was made solely to facilitate appellate review of the summary judgment.
[3] The facts that we recite were taken from the papers filed by the parties in support and opposition to the motion for summary judgment filed by Torti.
[4] Watson claimed that he lost control of the vehicle after he swerved to avoid an animal that had darted in front of him.
[5] Civil Code section 1714 states: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

In Williams v. State of California, supra, 34 Cal.3d 18, 23, 192 Cal.Rptr. 233, 664 P.2d 137, the court stated: "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act. [Citations.] Also pertinent to our discussion is the role of the volunteer who, having no initial duty to do so, undertakes to come to the aid of anotherthe `good Samaritan.' He is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. [Citation.]"
[6] The definitional sections govern all provisions of the division, unless "the context otherwise requires." (Health & Saf.Code, § 1797.50)
[7] Section 1799.104, the code section following section 1799.102, discusses immunity to physicians and nurses who are trained in emergency care. Watson argues that the placement of section 1799.102 right before immunity statutes intended for certified people is strong evidence that the statute was not intended to be applied to a non-certified or non-professional Good Samaritan unless they are trained and are providing emergency medical care. We would not go that far. Section 1799.102, on its face, clearly applies to "any person" providing "emergency care" at the "scene of an emergency." There is no predicate requirement that the person be trained or certified in order to claim the immunity. Thus, the critical issue is the meaning and effect to be given to the terms "emergency care" and "scene of an emergency."
[8] There may be circumstances in which moving someone from their current location is a matter of medical exigency, such as where a carbon monoxide poisoning victim needs to be moved to a source of fresh air. We do not hold that the act of moving a person is never the rendition of emergency medical care, only that it was not in this case.
[9] See also CACI 450, which provides: "450. Good Samaritan [Name of defendant] claims that [he/she] is not responsible for [name of plaintiff]'s harm because [he/she] was voluntarily trying to protect [name of plaintiff] from harm. If you decide that [name of defendant] was negligent, [he/she] is not responsible unless [name of plaintiff] proves both of the following: [¶] 1. [(a) That [name of defendant]'s failure to use reasonable care added to the risk of harm;] [or] [¶] [ (b) That [name of defendant ]'s conduct caused [name of plaintiff] to reasonably rely on [his/her] protection;] and [¶] 2. That the [additional risk/reliance] resulted in harm to [name of plaintiff]."

In addition, see Restatement Second of Torts, section 323, which provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if [¶] (a) his failure to exercise such care increases the risk of such harm, or [¶] (b) the harm is suffered because of the other's reliance upon the undertaking."